UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

98 JUL 10 AM II: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

HARRY M. SHINDLEBARROW,            )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )   Civil Action No. CV-96-S-2612-NE
                                   )
CRAVEN H. CROWELL, JR.,            )
WILLIAM H. KENNOY, and,            )
JOHNNY H. HAYES, as members        )   **ENTERED**
of the Board of Directors          )
for The Tennessee Valley           )   JUL 1 0 1998
Authority,                         )
                                   )
        Defendants.                )

### MEMORANDUM OPINION

Harry M. Shindlebarrow is a 59 year old male who brings this
action under the Age Discrimination in Employment Act of 1967,
codified at 29 U.S.C. §§ 621-634. He commenced this action against
Craven H. Crowell, Jr., chairman of the Tennessee Valley Authority
board of directors, on October 7, 1996. He amended the complaint
on January 16, 1997, to add TVA board members William H. Kennoy and
Johnny H. Hayes as parties defendant. (Doc. No. 9.) He alleges
the following adverse employment actions were taken against him:
(1) his position as a night-shift task manager, assigned to the
"recovery group" for nuclear reactor unit three at TVA's Browns
Ferry nuclear power generation facility, was deemed "at risk" of
elimination on September 15, 1994; (2) he was transferred to TVA's
"Service Organization" on September 18, 1995; (3) he was
"continually denied promotions"; and (4) he received "less
favorable performance reviews than other younger employees in the

33

same pay grade and position." (Complaint ¶¶ 6-10.) The action presently is before the court on defendants' motion for summary judgment.[1]

Defendants challenge plaintiff's claims on three fronts. First, they contend the decision to designate plaintiff's night-shift task manager position as "at risk," and, his subsequent transfer to TVA's Service Organization, resulted from a planned reduction-in-force, not age-based animus. Second, they contend plaintiff failed to timely raise his promotional claims. Finally, defendants argue that plaintiff's claims of discriminatory performance reviews also are barred for failure to exhaust administrative remedies. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the

---

[1] Also pending is defendants' motion for leave to file a reply brief. The court finds it would not be aided by defendants' response. Accordingly, defendants' motion for leave to file same is due to be denied as moot.

2

case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

3

Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

With the foregoing standard in mind, the court now will summarize the undisputed facts or, if disputed, will state them in a manner most favorable to the non-moving party, plaintiff Harry M. Shindlebarrow.

## II. SUMMARY OF FACTS

The Tennessee Valley Authority hired Harry M. Shindlebarrow in 1970. Shindlebarrow's initial position with TVA is not revealed in the record before the court. The relevant fact, however, is that Mr. Shindlebarrow began working as a night-shift task manager, PG-8,[2] assigned to the recovery group for nuclear reactor unit three at TVA's Browns Ferry nuclear power generation facility in Limestone County, Alabama, on October 11, 1991. (Complaint ¶ 6.) "Recovery group" employees were responsible for returning decommissioned nuclear reactors to operational status. (Stinson Deposition at 17-18.) Shindlebarrow's duties included "overseeing

---

[2] The designation "PG-8" refers to plaintiff's pay grade. All TVA managers and specialists are classified according to eleven numbered pay grades. (Norton Affidavit ¶ 2.)

4

workers who did sheet metal, carpentry work, painters, iron workers, laborers, operators and teamsters." (*Id.* at 39.)

## A. "At Risk" Designation and Transfer to TVA's "Service Organization"

Shindlebarrow, along with all other employees in the unit three recovery group, received a notice of "at risk" status on September 15, 1994. (Shindlebarrow Deposition at 25-26.)  The notice made clear that all recovery group positions were "targeted for surplus as of September 30, 1995," based on evolving "work force planning projections" and "future business needs." (Defendants' Exhibits 1, 3-4, and 7.)  Howard Lawrence, manager of Shindlebarrow's recovery group, testified that "there was an end game.  We were told that after unit three recovery that our function was to work ourselves out of a job.  To get your job done." (Lawrence Deposition at 73 (emphasis supplied).)

As Shindlebarrow's recovery group completed its work during February of 1995, Howard Lawrence and David Stinson, TVA vice president in charge of nuclear projects, determined that the declining work load no longer justified a night-shift.  Thus, plans were made to eliminate all night-shift positions, and to transfer those workers to TVA's Services Organization ("TVAS").  TVAS was a one year transition program, designed to help employees find new positions, either within TVA or elsewhere.  (Stinson Deposition at 15.)  All night-shift recovery group jobs were eliminated, and all night-shift employees were transferred to TVAS in February of 1995,

5

with one notable exception: Harry Shindlebarrow. Stinson and
Lawrence instead placed him in a temporary position on the day-
shift.

[W]e started destaffing the night shift first. The
reason for destaffing the night shift first was that we
had duplicate functions between day shift and night
shift. The day staff was on day shift and so for
coordination purposes, it is easier to do testing work
toward the end of the project and coordinate with them.
... [A]s you close down a project you have to do more
close coordination with the guys on the first shift and
so we completed the work that was assigned to the night
shift people and started destaffing the night shift.
Essentially we had duplicate management across the board.
It helped us to reduce the number of managers on night
shift.
       That was the first time that Shotgun [Harry
Shindlebarrow] was available to go into [TVAS]. We
didn't do that. I brought him to day shift to finish out
the [contract work being performed by General Electric
("GE")]. We had a big project and even though GE was
staffed to do that work standing alone, ... he had
managed jobs like that before. It was critical. I
wanted to keep Shotgun around just to make sure that it
was coordinated well and he could do the work so I
brought him from night shift to day shift to do that job.

(Stinson Deposition at 21-22.)  Similarly, Lawrence testified that

part of the reason for Mr. Shindlebarrow getting to stay
on as long as he did is because we assigned him from
civil to mechanical responsibility with General Electric.
... GE needed some support and myself and Dave Stinson
discussed it and said well, we have Shotgun [Harry
Shindlebarrow] coming available. Rather than sending him
to services at this time, let's send him to [work on the]
GE portion of that and help him out as task manager which
we did until they were done with him. We recognized this
and utilized it to the extent we could.

(Lawrence Deposition at 57.)  Six months later, on September 18,
1995, upon completion of his responsibilities for coordinating
General Electric's contract work, Shindlebarrow's work was deemed
complete and he was transferred to TVAS. (Defendants' Exhibit 2 at

6

2.)  At the time of his transfer to TVAS, Shindlebarrow was 58 years old and within two years of qualifying for increased retirement benefits.  (Shindlebarrow Deposition at 78.)

Shindlebarrow contends that he was the only recovery group task manager transferred to TVAS in 1995; he asserts that other, allegedly younger, task managers were permitted to continue working at Browns Ferry into calendar year 1996.  (Shindlebarrow Deposition at 26-27.)  Shindlebarrow also contends the night-shift work he had been performing before his transfer to the day-shift, to coordinate GE's contract work, was not completed at the time of his transfer to TVAS; instead, younger task managers were allowed to stay on to complete the work Shindlebarrow had been performing.  (*Id.* at 26-27.)

## B.  Denial of Opportunities for Promotion

Shindlebarrow also contends he was "continually denied the opportunity to compete for promotions," because managerial vacancies were not posted.  (Complaint ¶ 8.)  According to Stinson, TVA's policy "was to post [job openings] on the bulletin board." (Stinson Deposition at 6.)  Nevertheless, Stinson testified that "[t]here were various reasons why you ... would not have to post jobs.  [W]e were not required to post management jobs per se.  We did it as a courtesy mainly."  (*Id.* at 7.)  Lawrence, who held primary responsibility for filling job vacancies within the recovery group, testified that he waived the posting requirement in some cases:

7

There was no need in letting it take place. I knew my people. I was the manager. I knew who my strong side was, who my best resources was to fit that position so there was no need in spending the time and money to go through a process when I already had a resource already there capable of doing that that I felt was better qualified than the others. If I had announced that position and let Mr. Shindlebarrow and four others apply for it and they come in and sit with me and the rest of the people and were screened and I felt like this individual was stronger and better to fit the position, then he was going to get it. This is not like I was screening or interviewing four or five people that I did not know from anywhere. I mean these are people I have been working for years. I knew who the strong ones are. There is no need for me to go through a selection process when I already knew who I had already in my organization to fit that.

(Lawrence Deposition at 26 (emphasis supplied).)

In any event, Shindlebarrow contends the denial of promotional opportunities "caused him to remain in the position of PG-8 Task Manager up to the time that his position was placed 'at risk.'" (Complaint ¶ 10.)    In addition to those allegations of discrimination, Shindlebarrow contends Lawrence pushed him to accept early retirement, by asking him "[j]ust where do you think that you are going to work when this is all over?" (*Id.* ¶ 15.)

## C.   Discriminatory Performance Reviews

Shindlebarrow alleges that he received less favorable quarterly performance reviews than younger employees holding the same pay grade and position, "despite superior job performance." (Complaint ¶ 11.)    He alleges the performance reviews were not conducted in accordance with TVA policy because, on at least one occasion, his review was conducted by someone other than his

8

supervisor. (*Id.* ¶ 11.) On deposition, Shindlebarrow conceded his only complaint related to his 1993 performance review. (Shindlebarrow Deposition at 83.) He described his allegations as follows:

- A. [I]n '93 David Allen made my service review. I go in and I talk about it and I agree with it, but I didn't have to sign that one. Then when the real boy came out, Brownie Harrison called me back in the office and went over my service review with me. And I said, Brownie, I can't sign that. That's been changed.

- Q. So you refused to sign it?

- A. I refused to sign it and I went to human resources to [tell] that I didn't agree with it and I wasn't signing it. And he said, well, you don't have to sign it but they can still process it. I went to Sharon Greer[,] the lady that types it up. She said, yes, she was ordered to change my service review because of funds allegations [sic]. Here I'm the oldest guy in the bunch and they're giving these other guys better service reviews than me that were younger than me.

(*Id.* at 78-79.)[3]

### III. DISCUSSION

Plaintiff bears the ultimate burden of proving that age was a determining factor in the employer's decision to terminate his employment. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993). He may do that by means of direct evidence, circumstantial evidence, or statistical evidence. *Alphin v. Sears,*

---

[3] Shindlebarrow also contends in his complaint that younger employees who received promotions were permitted to "abuse 'Comp Time' as vacation time without taking vacation leave, and applying all hours of annual leave toward retirement." (Complaint ¶ 12.) He admits on deposition, however, that he also could have applied his "Comp Time" to vacations, but he voluntarily chose not to do so. (Shindlebarrow Deposition at 95-97.) His complaint about younger employees' alleged abuse of comp time is, therefore, neither an independent claim of discrimination nor is it supportive of his other claims.

9

*Roebuck & Company,* 940 F.2d 1497, 1500 (11th Cir. 1991). Plaintiff has presented no statistical evidence of discrimination. He instead asserts that direct and circumstantial evidence support his claims.

Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without the need to engage in inference or presumption. *E.g., Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Shindlebarrow contends Howard Lawrence made the following remark when he declined TVA's offer of early retirement in 1995: "Just where do you think that you are going to work when this is all over?" (Complaint ¶ 15.) Shindlebarrow argues that remark constitutes direct evidence of age discrimination. The Eleventh Circuit instructs, however, that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, ... constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). Lawrence's ambiguous comment falls short of that mark. Accordingly, the court finds Shindlebarrow has presented no direct evidence of discrimination.

Circumstantial evidence, on the other hand, is evidence which merely "*suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence." *Earley*, 907 F.2d at 1081-82 (emphasis in original). When relying on circumstantial evidence to prove age discrimination, a plaintiff must comply with the

10

analytical framework formulated by the Supreme Court in a trilogy

of decisions rendered over a period of two decades, beginning with

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973), then elaborated in *Texas Department of*

*Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor*

*Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407

(1993). Although those cases involved discrimination claims under

Title VII of the Civil Rights Act of 1964, a variant of the

analytical framework developed by that trilogy of decisions applies

to claims under the ADEA as well. *E.g., Alphin v. Sears, Roebuck*

*& Company,* 940 F.2d 1497, 1500 (11th Cir. 1991). The framework has

three steps.

First, plaintiff's presentation of evidence establishing a

*prima facie* case "creates a rebuttable presumption of unlawful

discrimination." *United States v. Crosby,* 59 F.3d 1133, 1135 (11th

Cir. 1995)(citation omitted). Next, the defendant may rebut the

presumption established by the *prima facie* case "by articulating a

nondiscriminatory reason for its actions." *Id.* (citation omitted).

Finally, if the defendant satisfies its burden of articulating a

nondiscriminatory reason for its actions, the presumption of

discrimination "simply drops out of the picture," and the sole

inquiry becomes whether the plaintiff has proven intentional

discrimination. *Id.* (citation omitted). Plaintiff has the burden

11

of proving that the defendant's explanation is "a pretext for discrimination." To do that, a plaintiff must show both that the defendant's stated reasons for the contested employment decision are false, or not worthy of belief, and that it is more likely true than not true that discrimination was the true reason.

> [A] reason cannot be proved to be a "pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

*St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis in original). In other words, simply showing the employer's stated reasons are false, or unworthy of belief, does not—standing alone—compel a finding of discrimination; rather, a plaintiff still must prove that discrimination was a motivating factor in the decision.

> It is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.

*Id.*, 509 U.S. at 519, 113 S.Ct. at 2754 (emphasis in original). The goal of that three-step process is to "progressively ... sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.*, 509 U.S. at 506, 113 S.Ct. at 2746 (*quoting Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

## A.    Elements of a Prima Facie Case

Both parties recite an inappropriate *prima facie* case for Shindlebarrow's claims. Plaintiff relies upon the following four prong test derived from *McDonnell Douglas*:    (1) plaintiff was a

12

member of the protected group; (2) he was discharged; (3) he was replaced with a person substantially younger; and (4) he was qualified to do the job. (*See* Plaintiff's Brief at 7.) The former Fifth Circuit instructs, however, that "[r]eduction-in-force cases are obviously outside the embrace of [such a test] since reduction-case plaintiffs are simply laid off and thus incapable of proving the third ... element, *i.e.*, actual replacement by a younger employee." *Williams v. General Motors Corp.*, 656 F.2d 120, 128 (5th Cir. Sept. 18, 1981)[4]; *accord Jameson v. The Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996); *Mitchell v. Worldwide Underwriters Insurance Co.*, 967 F.2d 565, 567-68 (11th Cir. 1992); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045-46 (11th Cir. 1989).

Defendants inexplicably rely upon a *prima facie* model intended for discriminatory discipline cases. (*See* Defendants' Brief at 15.) Plaintiff was not discharged as a consequence of discipline; he was discharged as a consequence of a reduction-in-force, which he contends was implemented in a discriminatory fashion.

A *prima facie* case of age discrimination in the context of a reduction-in-force is established by showing: (1) that plaintiff was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

position or to assume another position at the time of discharge; and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision. *Benson v. Tocco*, 113 F.3d 1203, 1208 (11th Cir. 1997). Plaintiff asserts four adverse employment actions were taken against him. Each will be addressed in turn.

1.  **"At risk" designation**

Plaintiff contends the designation of his position (recovery group night-shift task manager) as "at risk" in September of 1994 constituted discrimination based upon age. It is undisputed that plaintiff, along with all other recovery group employees, including Stinson and Lawrence, received written notification on September 15, 19<u>94</u> that their positions were potentially at risk of elimination the following year: *i.e.*, "targeted for surplus as of September 30, 19<u>95</u>." The receipt of that notice did not constitute an adverse employment action, as plaintiff concedes. (Shindlebarrow Deposition at 24-25.) Moreover, the notice was received by <u>all</u> recovery group employees regardless of age; consequently, it also is insufficient to raise any inference that younger recovery group employees were treated more favorably than older ones. Thus, plaintiff cannot present a *prima facie* case based upon that action.

2.  **Transfer to TVAS**

Shindlebarrow has plainly established the first prong of a *prima facie* case: he was 58 years old on the date his employment

14

was terminated. Moreover, defendants concede he was qualified to perform the work assigned to him during his employment with TVA.[5] Nevertheless, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley*, 907 F.2d at 1082-83 (emphasis supplied). Plaintiff's job coordinating GE's contract work ended when the contract was completed in September of 1995. Plaintiff does not present any evidence that he was qualified to fill "another available job" within his recovery group at the time of his transfer to TVAS.

Instead, he contends some of the work he had performed on night-shift seven months earlier remained unfinished, and he should have been permitted to complete that work. Plaintiff testified on deposition that Lynn Smith, a 40 year old task manager in the unit three recovery group, but working on the day-shift, was allowed to take over his unfinished job duties:

> The one that I was really talking about right here is Lynn Smith. I got pulled off [night-shift] for a short time there to do the scram discharge header task manager work because I had knowledge of them and it was back in the mechanical area, working with ... General Electric. They had the contract to do this scram discharge header. During the meantime there, Lynn Smith got placed over the painters so Howard Lawrence and them interpreted that as my work was completed, so there wasn't any need for me staying on at the site. So they kept Lynn Smith down there after I went to services to finish up the plant,

---

[5] David Stinson testified that Shindlebarrow was "qualified to do tasks pretty much across the board as far as a task manager goes." (Stinson Deposition at 37.)

15

        painting the inside.   ...
            ... So my work was still going on down there when
        I went to services and it was being performed by guys
        that was younger than me.

(Shindlebarrow Deposition at 100-01.)   Thus, plaintiff appears to

argue that defendants' failure to transfer Smith to TVAS, so that

plaintiff could take over Smith's day-shift duties, constitutes age

discrimination.

        Yet, the Eleventh Circuit has emphasized that the ADEA does

not "require that 'younger employees be fired so that employees in

the protected age group can be hired,' or impose any added burden

on employers to transfer or rehire laid-off workers in the

protected age group as a matter of course." *Jameson v. The Arrow

Co.,* 75 F.3d 1528, 1533 (11th Cir. 1996)(citations omitted).   Thus,

TVA was under no obligation to terminate younger day-shift task

managers—like Lynn Smith—to create an open position for

Shindlebarrow.   Accordingly, he has failed to meet the second prong

of his *prima facie* case.

        **3.   Denial of opportunities for promotion**

        Defendants argue plaintiff's claims for discriminatory denial

of promotional opportunities are untimely, because he failed to

assert the claims within 45 days of the occurrence of the allegedly

discriminatory act, as required by EEOC regulations.   The court

agrees.

        Plaintiff first contacted an Equal Employment Opportunity

counselor about those claims on September 26, 1995.   (Defendants'

16

Exhibit 2 at 1.)  At that time, plaintiff contended he was denied an opportunity to compete for the promotions given to David D. Allen, John W. King, Jr., Clay L. Chandler, and James W. Long. (*Id.* at 3.)

In response, defendants submit the affidavit of Deborah S. Norton, TVA's human resources consultant at Browns Ferry Nuclear Plant, in which Ms. Norton avers that those men all were promoted to the position of task manager, PG-8, in November of 1991, at the same time as plaintiff.  (Norton Affidavit at 2.)  Thereafter, Allen was promoted to shift manager, PG-11, in April of 1992. King, Chandler, and Long were promoted to the position of senior task manager, PG-9, in October of 1992.  (*Id.*)  None of those employees received any further promotions through September 26, 1995, the date on which plaintiff first complained about being denied promotional opportunities.[6]

In *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *See also Canino v. United States EEOC*, 707 F.2d 468 (11th Cir. 1983)(holding that former federal employees must bring all employment discrimination claims under Title VII).  The *Brown* Court recognized that Title VII provides "a careful blend of administrative and judicial

_____
[6] Allen and King later applied and were selected for positions outside the recovery group.  Those positions, however, were demotions.  (Norton Affidavit at 2-3.)

17

enforcement powers" grounded upon "rigorous administrative exhaustion requirements and time limitations." *Brown,* 820 U.S. at 832-33, 96 S.Ct. at 1967-68. Those "preconditions," when met, trigger a federal employee's right to seek vindication against his employer's discriminatory conduct in federal district court. *Id.*

The Eleventh Circuit and other circuits have held that the ADEA has similar preemptive force, because it was modeled on, and has a similar purpose to, Title VII. *See Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir. 1983); *Purtill v. Harris,* 658 F.2d 134, 137 (3d Cir. 1981), *cert. denied,* 462 U.S. 1131, 103 S. Ct. 3110 (1983); *see also Dodson v. United States Army Fin. & Accounting Ctr.,* 636 F. Supp. 894, 895 (S.D. Ind. 1986)("the ADEA is the exclusive remedy for a federal employee who claims age discrimination").[7]

The ADEA provides two avenues of relief for federal employees complaining of discriminatory acts by their employer. *Ray,* 704 F.2d at 1483. The aggrieved employee may file an administrative complaint within the agency where he or she works. 29 C.F.R. § 1614.105. Alternatively, a federal employee may file suit directly in federal district court. 29 U.S.C. § 633(d).

Here, plaintiff pursued the administrative remedy, which requires that certain prerequisites be met. EEOC regulations require plaintiff to seek mandatory precomplaint counseling within

_____

[7] *See also* Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071 (1979)(instructing that when legislative history indicates the source of a section in the ADEA was a complementary section in Title VII, the two statutes are to be construed consistently).

18

45 days of the alleged discriminatory act.  29 U.S.C. §
1614.105(a)(1).  The regulations permit an extension of that period
of repose, but only "when the individual shows ... that he or she
did not know and reasonably should not have known that the
discriminatory matter or personnel action occurred...."  *Id.* at §
1614.105(a)(2).

Plaintiff contends he sought precomplaint counseling when he
became aware of the promotions.  He asserts he was not aware of the
promotions at the time they were made and, accordingly, could not
seek counseling at that time.  Yet, defendants present evidence
that plaintiff must have been aware of the promotions well before
1995, because he began reporting to some of those individuals
immediately after the promotions.  (Lawrence Deposition at 76.)  In
fact, Shindlebarrow admitted that Jim Long was his supervisor
during 1993, and that David Allen conducted one of his quarterly
performance reviews that same year.  (Shindlebarrow Deposition at
78-79.)  Moreover, during his initial precomplaint counseling
session in 1995, plaintiff admitted that "this practice began about
three years ago."  (Defendants' Exhibit 2 at 3.)  Thus, the court
concludes plaintiff either knew, or should have known, of the
challenged promotions at the time they were made or, in any event,
at a point in time more than 45 days before September 26, 1995.  As
the former Fifth Circuit[9] recognized in *Ray v. Freeman*, 626 F.2d
439, 442 (5th Cir. 1980), *cert. denied*, 450 U.S. 997, 101 S.Ct.

---

[9] See note 4 *supra*.

19

1701, 68 L.Ed.2d 198 (1981):

> It would be particularly inappropriate to allow ... a
> bypass of the administrative process in suits involving
> federal agencies. To permit Ray to seek judicial relief
> without first affording the federal-agency employer an
> opportunity to remedy discriminatory practices
> administratively would undermine "the crucial
> administrative role that each agency together with the
> Civil Service Commission was given by Congress in the
> eradication of employment discrimination." We hold that
> Ray may not secure judicial review of these claims
> without prior administrative consideration.

(citation omitted).  Accordingly, plaintiff's failure to timely

seek precomplaint counseling bars his promotional claims.[9]

### 4.    Discriminatory performance reviews

Defendants contend plaintiff's claim of a discriminatory

performance review also is barred for failure to exhaust mandatory

administrative remedies.  On deposition, plaintiff conceded his

only discrimination claim related to his 1993 performance review,

which he refused to sign.  (Shindlebarrow Deposition at 78-79, 83.)

On that review, the initials "DRH"[10] appear under the heading

"Manager," and the date "12/14/94" appears above the heading "Date

Discussed."  (Plaintiff's Exhibit 2 at 1.)    Thus, any claims

arising from that review must have been raised within 45 days of

that date, or no later than January 28, 1995.    Undisputedly,

plaintiff first sought precomplaint counseling in September of

1995.  (Defendants' Exhibit 2.)  Even then, plaintiff did not raise

---

[9] The same result would obtain even if the court found the 45 day ti
frame should be extended to preserve plaintiff's promotional claims, because
plaintiff offers no evidence to rebut defendants' nondiscriminatory reasons for
declining to consider him for promotions. Thus, summary judgment is appropriate
even if the timeliness bar is waived.

[10] Plaintiff identified the supervisor who discussed the contested review
with him as "Brownie Harrison." (Shindlebarrow Deposition at 79.)

20

any claims regarding discriminatory performance reviews. (*Id.*) Accordingly, plaintiff's claims arising from the 1993 review are barred for failure to exhaust administrative remedies. *See Ray v. Freeman,* 626 F.2d 439, 442 (5th Cir. 1980).

**B.   Nondiscriminatory Reasons**

Even if the court were to assume that plaintiff had established a *prima facie* case of age discrimination based upon his transfer to TVAS, defendants have articulated nondiscriminatory reasons for that action.   First, defendants state that a long-planned and ongoing reduction-in-force required elimination of plaintiff's position as soon as his work assignment with GE was completed.   Second, defendants contend plaintiff's skills were inferior to those task managers whose transfer to TVAS was delayed even longer than plaintiff's, into calendar year 1996.

Defendants contend that all recovery group jobs were destined for elimination as the work was completed.   Admittedly, all recovery group employees, including Lawrence and Stinson, received written notification in September of 1994 that their positions were at-risk of elimination the following year.   (Shindlebarrow Deposition at 25-26.)   Indeed, the record before the court reflects that all recovery group employees were transferred to TVAS in February of 1996, when the recovery work was completed.   (Lawrence Deposition at 84.)   Plainly, all recovery group employees, including plaintiff, recognized the planned obsolescence of their assignment: "I said [to] David [Stinson] it's a bad situation here

21

that we're the ones that start these units up and we're the ones
... that's going to get the ax." (Shindlebarrow Deposition at 66.)
Thus, defendants argue that all decisions to transfer recovery
group employees to TVAS primarily were based upon the completion of
individual work assignments in the context of an overall reduction
in force. That contention is borne out in plaintiff's case.

Plaintiff's last work assignment—coordinating GE's contract
work on day-shift—came to an end in September of 1995. Like all
other recovery group employees whose assignments were completed,
plaintiff then was transferred to TVAS. Plaintiff presents no
evidence to rebut defendants' contention that his GE work was
finished or, that other, younger task managers whose work also was
finished were not sent to TVAS. He merely argues that he should
have been allowed to resume his former night-shift duties which had
been reassigned to a day-shift employee: namely, Lynn Smith. At
the time of plaintiff's transfer to TVAS, however, his former
night-shift position no longer existed; and, as previously noted,
TVA was not obligated to fire or transfer Smith to make room for
Shindlebarrow on the day-shift recovery group.

Moreover, plaintiff does not contend that his transfer to day-
shift was discriminatory. Even if he alleged that his transfer to
day-shift was discriminatory, the overwhelming evidence is to the
contrary. In fact, plaintiff was treated more favorably than other
night-shift employees, because he apparently was the only person
selected for an open position on day-shift. Plaintiff presents no

22

evidence that other, younger night-shift employees were treated more favorably than he, or that his selection for the open day-shift position was improperly based upon his age. The undisputed facts surrounding Shindlebarrow's transfer to day-shift negate any age discrimination claim based upon that action.

Defendants also contend that plaintiff was sent to TVAS earlier than some other, younger task managers because his work habits and skill level were considered less appropriate for the tasks which remained to be done. (Stinson Deposition at 38-40; Lawrence Deposition at 40-42, 59, 62.) Stinson stated that the task managers who continued working after Shindlebarrow's transfer to TVAS "had broader skills" that were more appropriate for "the kind of work we were in. We had electrical breakage and mechanical breakage and valve work. We kept those task managers there as long as we could because of skill levels." (Stinson Deposition at 39.) Thus, Stinson testified, TVA delayed transferring task managers with "more specialized" skills "[t]hat we needed for start-up" of the recommissioned nuclear reactors. (Id. at 40.)

Finally, defendants produce evidence that at least two other, younger task managers were transferred from the recovery group to TVAS along with Harry Shindlebarrow on September 18, 1995. A "Precomplaint Counseling Report" completed by Willie J. Harvey, the Equal Employment Opportunity Counselor who received and investigated plaintiff's initial complaint in October of 1995, notes: "along with Counselee [Harry Shindlebarrow], the following

23

employees of his (Mr. Lawrence's) organization were transferred to TVAS on September 18, 1995: Ronnie A. Rogers (46), PG-8, Kenneth W. Thomas (48), PG-8, and John P. Wilson (44), PG-4." (Defendants' Exhibit 2 at 3.) The court notes that the other task managers transferred to TVAS with plaintiff were all substantially younger than he. In addition, task manager Clay Chandler, who was not transferred to TVAS until 1996, was 53 years old at the time of plaintiff's transfer, yet was kept on the job longer than several other task managers in their forties. (Id.)

Defendants thus have presented substantial evidence of a pre-determined plan to reduce TVA's workforce as work on the unit three nuclear reactor was completed. The decision to eliminate particular positions was based upon completion of individual work assignments and assessment of relative skill levels, an approach which sometimes yielded harsh results: those who finished their work first also were the first to be laid off; and those whose skills were needed for the remaining work were retained. Night-shift workers were the first to "work themselves out of a job," in February of 1995. Plaintiff would have been transferred to TVAS on that date, but for the decision to delay his transfer so that he could help coordinate an ongoing project on the day-shift.

Additionally, defendants have produced evidence that other, similarly situated recovery group employees who were younger than plaintiff also were transferred to TVAS in September of 1995, along with plaintiff. That evidence meets defendants' "exceedingly

24

light" burden of production, and effectively rebuts any inference
of discrimination that would be raised if plaintiff were deemed to
have established a *prima facie* case. *See Perryman v. Johnson
Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

## C.  Pretext

Plaintiff argues in brief that the purportedly "secret
promotions and discriminatory review" are evidence of
discriminatory animus. (Plaintiff's Response in Opposition to
Summary Judgment at 8.)   In other words, plaintiff contends
Lawrence's favoritism towards certain employees, as evidenced by
his admission that he sometimes promoted persons to managerial
positions without opening the vacancies up for competitive bidding,
demonstrates discriminatory intent. (*See* Lawrence Deposition at
26.)  Even if Lawrence handed out promotions to certain "favorite"
employees, however, favoritism alone does not establish that
defendants' articulated reasons for their decision to transfer
plaintiff to TVAS are false.   Moreover, favoritism is not a
violation of the ADEA, absent some evidence that Lawrence's alleged
preference for certain employees was based upon the impermissible
factor of age.  *See, e.g., Platner v. Cash & Thomas Contractors,
Inc.*, 908 F.2d 902, 905 (11th Cir. 1990)("To hold that favoritism
toward friends and relatives is *per se* violative of Title VII would
be, in effect, to rewrite federal law"); *McCollum v. Bolger*, 794
F.2d 602, 610 (11th Cir. 1986), *cert. denied*, 479 U.S. 1034, 107
S.Ct. 883, 93 L.Ed.2d 836 (1987)("Personal animosity is not the

25

equivalent of sex discrimination and is not proscribed by Title VII"); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)("The employer may fire an employee for ... a reason based on erroneous facts, or for no reason at all, as long as his action is not for a discriminatory reason.").

Additionally, plaintiff's contention that he was denied an opportunity to compete for promotions given to younger workers also is insufficient to establish pretext. Lawrence testified that plaintiff was not selected for a promotion, because he failed to demonstrate initiative in his former position.

A.    Well, based on my experience working with him and the assignments he had been given in the past, his performance, and even though it was satisfactory it was not excelling in all the different areas that a senior task manager PG-9 had to be excelling in or performing well in....

...

A.    Well, a lot of people go out and they go out and you give them tasks and responsibilities to do, they go beyond. They go out and they try to go beyond. They try to enhance their knowledge of other areas, you know, rather than just say this is my job and put the blinders on and all I have to do today is this. As long as I get this done I should be okay, can't nobody gripe. They don't go outside of those boundaries and go over and see if he can help this person, this person, this person, this person or see if they are in trouble with their particular work. What can I do to help you out? This is a person to me that is excelling ... and then you have the individual that is just [saying] I'm satisfied with whatever I'm supposed to do this hour and that is all I'm going to do. So the person that is trying to move forward to gather more to better enhance his responsibility or capabilities or qualifications and [who is] willing, you know, to promote that, to me is the better person. If I have an individual that is

26

> just doing the responsibility that he has today and
> feels like that is good enough, why should I
> promote him to more responsibility? He is just
> barely taking care of the one he has got. Does
> that answer your question without just telling you
> that I didn't feel he was qualified[?]

(Lawrence Deposition at 40-42.) Plaintiff offers no evidence to
refute Lawrence's assessment of his work habits.

Similarly, plaintiff presents no evidence that defendants'
articulated reasons for transferring him, first, to day-shift, and
then, to TVAS are false. Although he argues that he could have
performed the remaining work as well as those who remained, that
argument is not relevant to show pretext. In fact, defendants
admit that plaintiff was qualified to do some of the work which
remained. (Stinson Deposition at 38.) Clearly, however, they
could not retain every qualified employee to perform a rapidly
diminishing amount of work, and were not obligated to take adverse
employment actions against younger employees to make room for
plaintiff. (*Id.*)

Further, plaintiff's allegations regarding his 1993
performance review also are insufficient to establish pretext. His
complaints about the 1993 review are vague, and even if taken as
true, reveal no age-based discriminatory intent. Plaintiff directs
the court to no evidence that younger task managers received more
favorable performance reviews, or that his performance review was
unfavorable because of his age.

At this stage of the analysis, the Eleventh Circuit instructs
that "a plaintiff is entitled to survive summary judgment ... if

27

there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Plaintiff has presented no evidence which raises a genuine issue of fact as to the truth of defendants' proffered reasons for their actions. Accordingly, even assuming he had successfully presented a *prima facie* case based upon his transfer to TVAS, Shindlebarrow's claim must fail.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is due to be granted, and all claims of plaintiff are due to be dismissed. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _10th_ day of July, 1998.

United States District Judge

28